**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **JAMIRACLE ROBINSON;** | ) | |
| **TONI GIBSON, a/k/a TONI COPHER** | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO.:  2:25-cv-03030 |
| | ) | |
| v. | ) | |
| | ) | JUDGE: Hon. Brian C. Lea |
| | ) | |
| **SHELBY COUNTY, TENNESSEE;** | ) | |
| **RAKESHA CURRY; CHRISTOPHER** | ) | **SECOND AMENDED** |
| **HARTS; SERGEANT HARMON** | ) | **COMPLAINT** |
| **TOBAR; SERGEANT MARCUS** | ) | |
| **BOYD; LIEUTENANT EUREKA** | ) | |
| **BOYD; FLOYD BONNER, JR.;** | ) | **(Jury Demand Endorsed Hereon)** |
| **KIRK FIELDS; LEE HARRIS;** | ) | |
| **JOHN DOES 1-10** | ) | |
| | ) | |
| Defendants. | | |

Plaintiffs JaMiracle Robinson and Toni Gibson, a/k/a Toni Copher (together "Plaintiffs"), by and through undersigned counsel, submit this Second Amended Complaint against Defendants Shelby County, Tennessee, Rakesha Curry, Christopher Harts, Sergeant Harmon Tobar, Sergeant Marcus Boyd, Lieutenant Eureka Boyd, Floyd Bonner, Jr., Kirk Fields, Lee Harris, and John Does 1-10 (collectively, "Defendants"), and allege as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, as this action is brought, pursuant to 42 U.S.C. § 1983, to redress a deprivation of constitutional rights as set forth herein.

2.    This Court has personal jurisdiction over Defendants and venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because, upon information and belief, Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

3. Plaintiffs seek redress from all Defendant officers named herein in both their official and individual capacities.

4. Plaintiffs allege all corrections officers named herein were acting under and/or outside color of law and/or pursuant to the policies, customs, and/or usages of Shelby County Jail and/or Shelby County, Tennessee.

## II. PARTIES

5. At all times relevant herein, Plaintiff JaMiracle Robinson is an adult person and resident of the City of Memphis, County of Shelby, and State of Tennessee.

6. At all times relevant herein, Plaintiff Toni Gibson, a/k/a Toni Copher is an adult person and resident of the City of Memphis, County of Shelby, and State of Tennessee.

7. Defendant Shelby County, Tennessee ("Defendant County"), is a political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and the constitution of Tennessee. At all times relevant to this action, Defendant County maintains the Shelby County Jai and has power to hold prisoners within its facilities. It stands subject to liability as a "person" under Section 1983 and may be served with process through its legal department located at 160 North Main Street, Ninth Floor, Memphis, Tennessee, 38103.

8. At all times relevant to this action, Defendant Rakesha Curry was employed as a corrections officer for Defendant County and is a resident of Tennessee.

9. At all times relevant to this action, Defendant Christopher Harts was employed as a corrections officer for Defendant County and is a resident of Tennessee.

10. At all times relevant to this action, Defendant Sergeant Harmon Tobar was employed as a corrections officer for Defendant County with supervisory control over Defendants Curry, Harts, and/or Does 1-10, and is a resident of Tennessee.

2

11.     At all times relevant to this action, Defendant Sergeant Marcus Boyd was employed as a corrections officer for Defendant County with supervisory control over Defendants Curry, Harts, and/or Does 1-10, and is a resident of Tennessee.

12.     At all times relevant to this action, Defendant Lieutenant Eureka Boyd was employed as a corrections officer for Defendant County with supervisory control over Defendants Curry, Harts, and/or Does 1-10, and is a resident of Tennessee.

13.     At all times relevant to this action, Defendant Floyd Bonner, Jr. is the Sheriff of Shelby County and is being sued in his individual and official capacity as the Sheriff of Shelby County. Defendant Bonner is responsible for the management and operation of Shelby County Jail, including the protection of the constitutional and statutory rights of all prisoners at Shelby County Jail. Defendant Bonner is responsible for implementing and enforcing the Jail's policies and procedures at Shelby County Jail. At all material times, Defendant Bonner was acting under color of state law and as Sheriff of Shelby County.

14.     At all times relevant to this action, Defendant Kirk Fields is the Chief Jailer of Shelby County and is being sued in his individual and official capacity as the Chief Jailer of Shelby County. Defendant Fields is responsible for the management and operation of Shelby County Jail, including the protection of the constitutional and statutory rights of all prisoners at Shelby County Jail. Defendant Fields is responsible for implementing and enforcing the Jail's policies and procedures at Shelby County Jail. At all material times, Defendant Fields was acting under color of state law and as Chief Jailer of Shelby County.

15.     At all times relevant to this action, Defendant Lee Harris is the Mayor of Shelby County and is being sued in his individual and official capacity as the Mayor of Shelby County. Defendant Harris is responsible for the management and operation of Shelby County Jail,

3

including the protection of the constitutional and statutory rights of all prisoners at Shelby County Jail. Defendant Harris is responsible for implementing and enforcing the Jail's policies and procedures at Shelby County Jail. At all material times, Defendant Harris was acting under color of state law and as Sheriff of Shelby County.

16.     At all times relevant to this action, Defendants John Does 1-10, whose names and addresses are unknown despite the exercise of reasonable diligence, are believed to be corrections officers, supervisors, commanders, and/or other administrative, division of police, or employees of Defendant County whose identities or involvement in the events giving rise to the claims asserted herein cannot be ascertained and/or discovered by Plaintiffs at the present time, but whom, through conducting discovery, may become known as being persons properly included as Defendants in this matter.

### III.    STATEMENT OF FACTS

17.     At all times relevant to this action, Defendants Rakesha Curry, Christopher Sergeant Harmon Tobar, Sergeant Marcus Boyd, Lieutenant Eureka Boyd, and John Does 1-10 ("the Corrections Officer Defendants") are responsible for confining inmates at the Shelby County Jail, a facility located in the City of Memphis, State of Tennessee.

18.     At all times relevant to this action, Defendant County's policy is that male inmates are housed in a facility in downtown Memphis at 201 Poplar Avenue, and female inmates are housed in a facility in east Memphis at 6201 Haley Road and/or 1045 Mullins Station Road.

19.     At all times relevant to this action, Plaintiffs are both inmates at Shelby County Jail at the facility located at 6201 Haley Road and/or 1045 Mullins Station Road.

4

20.     On or around November 12, 2024, male inmates of Shelby County Jail are housed in the female inmate facility at 6201 Haley Road and/or 1045 Mullins Station Road due to overcrowding.

21.     At or around the same time, upon information and belief, male inmates are housed in Cell #6 of the facility.

22.     At or around the same time, upon information and belief, the Corrections Officer Defendants are aware that Cell #6 does not lock and/or is kept in such a manner that allows inmates to readily open the cell and escape.

23.     Despite this knowledge, the Corrections Officer Defendants never do anything to remedy or otherwise address this issue with Cell #6.

24.     On or around November 12, 2024, Defendant Christopher Harts is on duty and tasked with monitoring the door of Cell #6 which, if accessed, would grant inmates of Cell #6 into other cells within the facility, including those of female inmates.

25.     Because Defendants have witnessed physical attacks, sexual assaults, and violence within the Shelby County Jail, Defendants are aware of the dangers created by leaving Cell #6 unlocked.

26.     At or around the same time, Defendant Rakesha Curry is on duty working as a guard in the same area as Defendant Christopher Harts.

27.     At or around the same time, a male inmate that is housed in Cell #6 ("The attacker") approaches the door of Cell #6 that Defendant Christopher Harts is monitoring.

28.     Defendant Christopher Harts and/or Rakesha Curry know that the attacker has no reason nor justification to enter Cell #6 because he is dressed as an inmate, wears no uniform, and has no ID or security clearance for that area.

29.     At or around the same time, Defendant Christopher Harts deliberately allows the attacker to gain entrance through the door of Cell #6, to wit: he opens the door so that the attacker can walk through and/or allows the attacker to open the door and gain access without stopping him and/or otherwise actively assist the attacker by explaining that he can open the door.

30.     At or around the same time, Defendant Rakesha Curry witnesses the attacker gain entrance through the door of Cell #6, but does nothing to stop him, alert other guards of the need for assistance, or otherwise notify the attacker that he cannot enter through the door.

31.     The attacker gains access to other cells within the facility, including the cells of Plaintiffs.

32.     Upon gaining access to the other cells, the attacker puts a cover over his head, as to hide his face and appearance.

33.     Defendant Rakesha Curry and/or Defendant Christopher Harts watch as the attacker enters the cells of female inmates.

34.     The attacker enters Plaintiff JaMiracle Robinson's cell.

35.     The attacker forcibly, and against Plaintiff JaMiracle Robinson's will, sexually assaults her.

36.     The attacker enters Plaintiff Toni Gibson's cell.

37.      The attacker forcibly, and against Plaintiff Toni Gibson's will, sexually assaults her.

38.     On the date of the attack, Defendants do not stop the attacker, report the incident, or otherwise take any action to address the instances of sexual assault.

6

# IV.    CLAIMS ALLEGED

## COUNT I
**42 U.S.C. § 1983 - Eighth Amendment**
**Deliberate Indifference**
**(Defendants Curry, Harts, and John Does 1-10)**

39.    This claim is brought pursuant to Title 42 U.S.C. § 1983.

40.    Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

41.    The Eighth Amendment to the United States Constitution states, in relevant part, "cruel and unusual punishments [shall not be] inflicted."

42.    It is well settled that "prison officials have a duty under the Eighth Amendment . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 825, 114 S. Ct. 1970, 1973, 128 L. Ed. 2d 811 (1994).

43.    The Sixth Circuit Court of Appeals has long held that "an inmate's right to be free from prison violence as clearly established. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (*citing Doe v. Bowles,* 254 F.3d 617, 620 (6th Cir.2001) ("The right of an inmate to be protected from an attack by a fellow inmate was well established at the time the events in question took place."); *Walker v. Norris,* 917 F.2d 1449, 1453 (6th Cir.1990) ("On several occasions, we have held that 'deliberate indifference' of constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another . . ."")).

44.    At all times relevant to this matter, the Defendants were clothed with the authority of the state and misused that authority.

7

45. While acting under color of law, Defendants deprived Plaintiffs of their well-established right to be free from cruel and unusual punishment.

46. In other words, Plaintiffs assert that Defendants had notice of and displayed deliberate indifference to the readily apparent risk of allowing a male inmate into an unauthorized area, through the door of Cell #6, where he could encounter female inmates, and the likely consequences of that condition.

47. Defendants had notice of – and time to respond to prevent – a strong likelihood that the attacker would sexually assault female inmates, including Plaintiffs.

48. Defendants actively assisted the attacker to inflict serious harm on Plaintiffs and displayed deliberate indifference towards them, to wit:

    a. Defendant Christopher Harts disregarded his duties to monitor the door of Cell #6 and aided the attacker in gaining entrance into Plaintiffs' cells;

    b. Defendant Christopher Harts acted to inform the attacker that he would be able to gain entrance into Plaintiffs' cells;

49. Defendants actively and purposefully ignored the risk of serious harm to Plaintiffs and displayed deliberate indifference towards them, to wit:

    a. Defendant Rakesha Curry, after witnessing the attacker gain entrance through the door of Cell #6, took no action to stop him, alert other guards of the need for assistance, or otherwise notify the attacker that he cannot enter through the door;

    b. Defendant Rakesha Curry witnessed the attacker enter the cell of Plaintiff JaMiracle Robinson and did nothing to prevent this;

8

    c.  Defendant Rakesha Curry witnessed the attacker enter the cell of Plaintiff Toni Gibson and did nothing to prevent this;

    d.  Defendant Christopher Harts witnessed the attacker enter the cell of Plaintiff JaMiracle Robinson and did nothing to prevent this;

    e.  Defendant Christopher Harts witnessed the attacker enter the cell of Plaintiff Toni Gibson and did nothing to prevent this;

    f.  Defendants did not notify anyone of the incident on the day that it occured.

50.    Additionally, through the Shelby County Jail's practices and policies, Defendants have subjected Plaintiffs to a substantial risk of serious harm and deprived them of the minimal civilized measure of life's necessities and basic human dignity by exposing them to a dangerous male inmate (the attacker).

51.    These practices and policies are inconsistent with current American standards of decency.

52.    In doing so, Defendants have caused Plaintiffs to suffer the wanton infliction of pain and suffering of body and mind.

53.    There is no legitimate penological purpose for these practices and policies.

54.    Defendants have been and are aware of all the deprivations set forth in this complaint and have been and remain deliberately indifferent to them.

55.    All Defendants are aware of the substantial risk of harm caused by these deprivations and have not acted to reduce or eliminate the risks posed by them.

56.    The aforesaid acts and failures to act of the Defendants caused Plaintiffs to suffer mental anguish, physical injuries, pain and suffering.

9

57.    As a direct and proximate result of Defendants' actions, all in violation of Plaintiffs' clearly established Eighth Amendment rights, as set forth above, Plaintiffs have been damaged, including but not limited to: intense physical pain, mental pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, depression, mental and emotional distress, extreme fear, anxiety, loss of sense of personal safety and dignity, loss of enjoyment of life, economic damages, and all other damages allowed by law.

## COUNT II
### Supervisory Liability
### (Defendants Sergeant Tobar, Sergeant Boyd, and Lieutenant Boyd)

58.    At all times relevant to this matter, Defendant Sergeant Harmon Tobar was the direct supervisor(s) of Defendant Rakesha Curry and/or Defendant Christopher Harts.

59.    At all times relevant to this matter, Defendant Sergeant Marcus Boyd was the direct supervisor(s) of Defendant Rakesha Curry and/or Defendant Christopher Harts.

60.    At all times relevant to this matter, Defendant Lieutenant Eureka Boyd was the direct supervisor(s) of Defendant Rakesha Curry and/or Defendant Christopher Harts.

61.    At all times relevant to this matter, Defendants knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

   a. The choice of officers to not address the known fact that Cell #6 did not lock, and the known risk that this posed;

   b. The choice to allow the attacker into the area where he could access the cells of Plaintiffs;

   c. The choice to assist the attacker to gain access to Plaintiffs' cells; and

   d. The choice not to immediately inform anyone of the incident.

62.     Accordingly, Defendants knew or reasonably should have known that their acts and/or failures to act would likely cause the constitutional injury that befell Plaintiffs, to wit: by endorsing, promoting, encouraging, and/or not intervening to prevent the sexual assault of Plaintiffs.

63.     Defendants violated Plaintiffs' Eighth Amendment Rights to be free cruel and unusual punishment.

64.     Defendants had a duty and/or were required by their training to take action to prevent officers from acting deliberately indifferent towards the danger to female inmates like Plaintiffs, that allowing the attacker access to their cells would create, as described in this Complaint.

65.     Despite their knowledge of the misconduct of Defendants Curry and/or Harts, as stated in this Complaint, Defendants took no action, failed to impose reasonable discipline on Defendants Curry and/or Harts, failed to document the misconduct of Defendants Curry and/or Harts fully and accurately, and/or otherwise abandoned their supervisory duties.

66.     As a result of these failures and/or abandonment of supervisory duties, as stated above, Defendants created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided the misconduct of Defendants Curry and/or Harts against Plaintiffs.

67.     Defendants engaged in acts and omissions that were the product of a reckless or callous indifference to Plaintiffs' constitutional rights, to wit: Defendants approved, endorsed, and/or condoned the deliberate indifference towards Plaintiffs in the manner detailed above.

68.    By their failure to intervene or empowerment of Defendants Curry and/or Harts to be deliberately indifferent towards Plaintiffs' safety and constitutionally protected rights, Defendants in fact caused Plaintiffs' constitutional deprivation.

69.    As a direct and proximate result of Defendants' actions, all in violation of Plaintiffs' clearly established Eighth Amendment rights, as set forth above, Plaintiffs have been damaged, including but not limited to: intense physical pain, mental pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, depression, mental and emotional distress, extreme fear, anxiety, loss of sense of personal safety and dignity, loss of enjoyment of life, economic damages, and all other damages allowed by law.

## COUNT III
### Municipal Liability - *Monell*
### (Defendants County, Bonner, Harris, and Fields)

70.    This claim is brought pursuant to Title 42 U.S.C. § 1983.

71.    This claim is brought per *Monell v. Dep't of Soc. Svcs. of City of New York,* 436 U.S. 658 (1978).

72.    Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written laws or express policy is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (e) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

12

73.    A municipality is liable under § 1983 when its agency's policy or custom, as evidence in any of the manners set forth above, is "closely related" to the ultimate constitutional injury suffered by the plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

74.    Defendant Floyd Bonner, Jr. and/or Lee Harris and/or Kirk Fields is/are the top policymakers for Defendant County.

75.    Defendant County maintains prisons with the power to hold prisoners.

76.    Defendant County is aware that its officers engage in dangerous and deliberately indifferent behavior that involves actively ignoring, assisting, and/or otherwise allowing violence to occur between inmates in violation of the Eighth Amendment.

77.    Defendant County has a long-standing and unwritten policy or custom of condoning violent and dangerous behavior against inmates, including sexual assault.

78.    In the last decade, Shelby County Jail has experienced an alarming pattern of staff corruption and ongoing infrastructure failures.

79.    Indeed, chronic maintenance breakdowns, severe staffing shortages (approximately 300 vacancies), and interventions by civil rights organizations demonstrate that Shelby County Jail has a systemic and ongoing pattern of abuses of inmates' constitutional rights.

80.    Shelby County Jail detainees report that many housing units are left unchecked, and that gang-affiliated inmates are held with others unchecked, leading to assaults and safety hazards.

81.    Overall Jail Conditions, maintenance, staffing, and oversight at Shelby County Jail have been widely criticized.

82.    Shelby County Jail's facilities suffer chronic maintenance problems, including but not limited to broken sliding cell-door tracks, failing locks, plumbing and elevator breakdowns,

13

and an outdated boiler system requiring replacement. Reports in 2024 found that approximately 100 doors were inoperable throughout Shelby County Jail.

83.     As stated and shown herein, Defendant County maintains a pattern and practice of not properly supervising inmates and not protecting inmates from violence and harm while in the County's custody and control.

84.     Conditions throughout Shelby County Jail remain so poor that in May 2024, inmates staged fires in protest, citing the "crumbling" conditions.

85.     Several lawsuits and oversight actions have sought to rectify Defendant County's pattern and practice of maintaining dangerous conditions for inmates. In 2021, the matter *Busby v. Bonner* resulted in a settlement ordering enhanced COVID-19 protections for vulnerable detainees. Further, in 2021 Defendant County resolved a class-action, *Turnage v. Oldham*, which was brought by Shelby County Jail detainees that were held past their release dates: Defendant County paid $4.9 million and was required to expedite processing to free inmates promptly.

86.     Despite the abovementioned legal actions, Defendant County's policy and/or custom of condoning violent and dangerous behavior against inmates persisted. For example, because of Defendant County's custom and/or policy, inmate Marcus Donald was killed by a cellmate. The family of Marcus Donald maintain an action against, among others, Defendant County, which is currently before this Court. Case No. 2:23-cv-02738-TLP-atc.

87.     Tragically, the incident involving Marcus Donald is a common occurrence. Since Defendant Floyd Bonner, Jr.'s tenure as Sheriff of Shelby County, Shelby County Jail has had a drastic increase of inmate-on-inmate assaults. In fact, since 2019, Shelby County Jail has recorded more incidents of inmate-on-inmate assaults than ***all Tennessee state prisons combined***.

14

88.    Defendant County's custom and/or policy regarding condoning violence and sexual assault to occur has led to several instances of sexual abuse against inmates, to wit:

a. In early 2024, Shelby County Deputy Akira Jones was charged with sexual contact with a female inmate at Shelby County Jail. At least one female inmate is known to be a victim of sexual battery from Jones.

b. In January 2025, Deputy Bianca Granberry was arrested for official misconduct and bribery of a public servant after officials discovered that she had sexual contact and conducted video chats with an inmate at Shelby County Jail.

89.    Additionally, several current and former Shelby County Jail employees have been charged with criminal misconduct, to wit:

a. In March 2015, four detention officers were indicted on federal charges for a scheme to smuggle OxyContin into the jail in exchange for money.

b. In May 2019, former Shelby County Deputy, Marcus Green, was indicted on federal drug-trafficking charges after investigators found nearly a pound of marijuana at his home.

c. In September 2023, nine corrections deputies were indicted by a grand jury on second-degree murder and aggravated assault charges for their roles in the death of a Shelby County Jail inmate, Gershun Freeman.

d. In November 2023, Deputy Kimberly Price pleaded guilty to conspiracy to distribute cocaine and fentanyl after admitting she arranged deliveries of these drugs to inmates. She was sentenced to 14 months in federal prison and two years supervised release.

e. In November 2024, Deputies Lillie Pittman and Joshua Williams were indicted for smuggling contraband into Shelby County Jail. Both deputies face charges including bribery of a public servant, introduction of contraband, and official misconduct.

f. In January 2025, Deputy Bianca Grandberry was arrested and indicted on charges of official misconduct and bribery. Investigators say Grandberry had an inappropriate relationship with an inmate and accepted cash payments in exchange for bringing contraband (drugs and a homemade weapon) into the jail.

90. Shelby County Jail's ongoing custom and policy of condoning violent and dangerous behavior against inmates has resulted in a disturbing pattern of preventable deaths, civil rights violations, and gross mismanagement.

91. Families of deceased and injured inmates—including Marcus Donald, Gershun Freeman, Ramon McGhee, Damien Florez-Ramirez, and others—have pursued or are pursuing civil claims against Defendant County and its officers regarding instances of violence within Shelby County Jail that occurred as a result of Defendant County's custom and/or policy described herein.

92. The aforesaid unwritten policies or customs (including but not limited to allowing dangerous inmates into prohibited areas or around other inmates that they have a high likelihood of harming) put Plaintiffs and other inmates at unreasonable risk of grievous bodily harm, injury, or death.

93. Defendants Bonner and/or Harris and/or Fields had knowledge of the aforesaid unwritten policies or customs because they worked at the Shelby County Jail at the time the aforesaid policies or customs were in place.

16

94.     At all times relevant hereto, the Defendants Bonner and/or Harris and/or Fields initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs.

95.     Defendants Bonner and/or Harris and/or Fields reviewed documents, discussed, and/or received details and information in the form of documents, reports, memos, and updates at the Shelby County Jail about the manner in which Defendants Harts and Curry were deliberately indifferent to Plaintiffs.

96.     By their actions and failures to act as aforesaid, Defendants Bonner and/or Harris and/or Fields approved of Defendants Harts and Curry's conduct and established the official policy, custom, and usage of unconstitutional conduct as stated herein that violated well-established Eighth Amendment right of Plaintiffs to be free from cruel and unusual punishment.

97.     These policies were the moving force behind the constitutional violation(s) that befell Plaintiffs, to wit:

      a.  The policies allowed the attacker to gain access to an area that he was supposed to be restricted from;

      b.  The policies allowed the attacker ample time to sexually assault two different female inmates in two different cells (Plaintiffs) without being stopped:

      c.  The policies allowed Defendants Harts and/or Curry to disregard the safety of female inmates, including Plaintiffs, by giving the attacker access to areas in the facilities where female inmates were housed; and

      d.  The policies created a culture of lawlessness, rule-breaking, and disrespect for the constitution, allowing and/or promoting the attacker's actions as stated herein.

e.   The policies created a culture of lawlessness, rule-breaking, and disrespect for the constitution, allowing and/or promoting the Defendants Harts and Curry's misconduct as stated herein.

98.    The unwritten policies and practices identified above undermine otherwise appropriate written policies maintained by Defendants.

99.    Defendants are also liable under *Monell* because Defendant County's training, decision-making- and policymaking with respect to the safety of inmates and/or professional boundaries and/or enforcement of PREA standards is so inadequate that it shows its deliberate indifference to the constitutional rights of inmates.

100.    Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been delivery indifferent to the need." *City of Canton*, 489 U.S. at 390.

101.    The above-mentioned circumstances show "the need for more or different training," as the Supreme Court outlined in *City of Canton v. Harris*. *Id*.

102.    Indeed, upon information and belief, on at least one occasion, the Tennessee Corrections Institute threatened to decertify Shelby County Jail and Defendant County's training academy.

103.    Defendant Bonner and/or Harris and/or Fields's toleration of and failure to properly discipline corrections officers who engage in said deliberate indifference is evidence that Plaintiffs' injuries are traceable to the Defendants' custom of permitting deliberate indifference towards the safety of inmates, and it is evidence that Defendants have acted with deliberate indifference in

18

failing to supervise their officers. See, e.g., *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (stating that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law").

104. Defendants' failure to adequately train their officers, including Defendants Harts and Curry, concerning the appropriate response to an inmate attempting to gain access into a prohibited area where he would foreseeably injure other inmates directly and proximately caused the violation of Plaintiffs' Eighth Amendment rights.

105. As a direct and proximate result of Defendants' actions, all in violation of Plaintiffs' clearly established Eighth Amendment rights, as set forth above, Plaintiffs have been damaged, including but not limited to: intense physical pain, mental pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, depression, mental and emotional distress, extreme fear, anxiety, loss of sense of personal safety and dignity, loss of enjoyment of life, economic damages, and all other damages allowed by law.

## V. JURY DEMAND

106. Plaintiffs respectfully demand a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

A. That Plaintiffs recover for their pain and suffering as a result of the incident, as described above, and all other claims;

B. That Plaintiffs recover for all compensatory and consequential damages available under Tennessee and/or federal law in an amount to be determined by a jury in

19

excess of this Court's jurisdictional amount, including past and future medical care and other economic and non-economic harm to be determined at trial;

C.    That Plantiffs receive all equitable relief, including, without limitation, that Defendants be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein; and

D.    That Plantiffs receive all attorneys's fees per Tennessee law and/or federal law, *i.e.* Title 42 U.S.C. § 1988, as well as the costs or interst accrued as a result of this action and any other costs that may be associated with this action; and

E.    That Plantiffs receive any and all other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

*/s/ Joseph T. Frate*
Kenneth P. Abbarno
Joseph T. Frate
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel.:    (440) 953-8888
Fax:    (440) 953-9138
kabbarno@dicellolevitt.com
jfrate@dicellolevitt.com

W. Bryan Smith (TNBPR No. 18230)
BRYAN SMITH & ASSOCIATES
119 South Main Street, Suite 500
Memphis, Tennessee 38103
(901) 450-4990 – telephone
(901) 450-4898 – facsimile
bryan@bluffcitylawyers.com

**Counsel for Plaintiff**

20